IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2005 JUN -1  AM 11: 00

| | |
|---|---|
| W.C. HERAEUS GMBH (a German corporation), and HERAEUS INCORPORATED (a Delaware corporation) ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | C.A. No. 04-904 (KAJ) |
| MARJORIE JOY LYNN as Personal Representative) for the ESTATE OF DAVID MARK LYNN and as ) Trustee of the MARK AND MARJORIE LYNN ) REVOCABLE TRUST, LYNN PLASMA, INC. ) (an Idaho corporation), NXEDGE, INC. ) (a Delaware corporation), and NXEDGE INC. OF ) BOISE (a Delaware corporation) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. ) | |

## SECOND AMENDED COMPLAINT

W.C. Heraeus GmbH (previously  known as W.C. Heraeus GmbH & Co. KG), and Heraeus Incorporated (collectively "Heraeus") bring this action for breach of contract, patent infringement, trade secret misappropriation, tortious interference with contract, breach of implied covenant of good faith and fair dealing, conspiracy to breach contract, fraudulent inducement and  negligent  misrepresentation  against  defendants  Marjorie  Joy  Lynn,  as  Personal Representative for the Estate Of David Mark Lynn and as Trustee of the Mark And Marjorie Lynn  Revocable  Trust  (collectively  the  "Lynn  Estate/Trust"),  Lynn  Plasma,  Inc.  ("Lynn Plasma"),  NxEdge,  Inc.  and  NxEdge  Inc.  of  Boise  (hereinafter  collectively  referred  to  as "NxEdge").  In support of its Complaint, Heraeus alleges and states the following:

### INTRODUCTION

1.      This action arises from a certain Exclusive Patent and Know-How License Agreement ("Exclusive License") between Heraeus and defendants David Mark Lynn ("Lynn,"

now deceased and represented by Marjorie Joy Lynn for the Lynn Estate/Trust), and Lynn Plasma who collectively granted Heraeus exclusive rights to a patent and also to certain trade secret know-how, both of which are commercially valuable to Heraeus in the manufacture, sale and use of sputter targets in the glass industry. As a result of the wrongful and unjustified actions of Lynn, Lynn Plasma and NxEdge, a non-party to the Exclusive License, NxEdge is now wrongfully using and profiting from the patented technology and from the trade secret know-how for which Heraeus has an exclusive license, to the great detriment of Heraeus.

## THE PARTIES

2.       W.C. Heraeus GmbH ("W.C. Heraeus"), previously known as W.C. Heraeus GmbH & Co. KG, is a limited liability company organized and existing under the laws of the Federal Republic of Germany, with a principal place of business in Hanau, Federal Republic of Germany. W.C. Heraeus is owned by Heraeus Holding GmbH, which is a corporation organized and existing under the laws of the Federal Republic of Germany.

3.       Heraeus Incorporated ("Heraeus Inc.") is a corporation organized and existing under the laws of Delaware, with a principal place of business in New York, New York. Heraeus Inc. is owned by Heraeus Holding GmbH, and is managed by W.C. Heraeus.

4.       Upon information and belief, David Mark Lynn ("Lynn"), an individual now deceased, was a citizen of Idaho, with an address of 4050 Chaparral Rd., Eagle, Idaho 83616. Defendant Marjorie Joy Lynn represents the Lynn Estate/Trust.

5.       Upon information and belief, Lynn Plasma is a corporation organized and existing under the laws of the State of Idaho with a principal place of business at 506 East 45th Street, Boise, Idaho 83714. Upon information and belief, David Mark Lynn was the founder of

3

Lynn Plasma, and Lynn Plasma is currently owned by the Estate Of David Mark Lynn and/or the Mark And Marjorie Lynn Revocable Trust.

6.    Upon information and belief, NxEdge, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business in Boise, Idaho.  Upon information and belief, Steve Neighbors, formerly the Vice President of Lynn Plasma, is now the Vice President and General Manager of NxEdge, Inc.

7.    Upon information and belief, NxEdge Inc. of Boise is a corporation organized and existing under the laws of the State of Delaware with a principal place of business in Boise, Idaho, and is believed to be a subsidiary of NxEdge, Inc.  Upon information and belief, Steve Neighbors, formerly the Vice President of Lynn Plasma, is now the Vice President and General Manager of NxEdge Inc. of Boise.

## JURISDICTION AND VENUE

8.    Heracus brings this action pursuant to the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and also seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

9.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction), 1338(a) (original jurisdiction under patent laws), and 1367 (supplemental jurisdiction).

10.    This Court has personal jurisdiction over defendants Marjorie Lynn, for the Lynn Estate/Trust, and Lynn Plasma pursuant to the Exclusive License which provides that that it shall be construed and enforced in accordance with the laws of the State of Delaware, and that the parties shall submit to the exclusive jurisdiction of the federal and state courts in Delaware with regard to any claim initiated under the Exclusive License.

4

11.    This Court also has personal jurisdiction over defendants NxEdge, Inc. and NxEdge Inc. of Boise because they are both Delaware corporations.

12.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) (general venue statute) and 28 U.S.C. § 1400 (venue for patent infringement claims) and because Heraeus, Lynn and Lynn Plasma expressly submitted to the venue of this Court pursuant to the Exclusive License.

## FACTUAL ALLEGATIONS

13.    Heraeus is in the business of, among other things, manufacturing and distributing sputter targets, and related equipment, in the glass industry. Sputter targets can be manufactured by using plasma spray technology to deposit material, such as silicon aluminum (Si/Al), onto the surface of a long metal tube. Such a sputter target is then sold for use in a glass coating process in which a thin-coating of the material is transferred from the target onto a glass panel by moving the glass panel alongside the target while the target is being bombarded by ions of a plasma.

### A.    Heraeus' Exclusive License To The Apparatus Technology And The Licensed Technology.

14.    W.C. Heraeus, in furtherance of its business interests, and of its affiliates, including Heraeus Inc., entered into the Exclusive License on or about February 21, 2002, with Lynn and Lynn Plasma. A true and correct copy of the Exclusive License, including the non-confidential attachments, exhibits and amendments, is attached hereto as Exhibit A and is incorporated herein. (Some of the exhibits to the Exclusive License are not attached hereto as those documents are believed to contain confidential and/or proprietary information, and may be subsequently provided if permitted to be filed under seal.)

5

15.    Pursuant to the Exclusive License, Lynn granted to W.C. Heraeus and its affiliates, including Heraeus Inc., an exclusive license to then pending Patent Application No. 09/788,060, and any patent issuing therefrom, which issued on April 23, 2002 as United States Patent No. 6,375,815 B1 (the "'815 patent"), entitled "CYLINDRICAL MAGNETRON TARGET AND APPARATUS FOR AFFIXING THE TARGET TO A ROTATABLE SPINDLE ASSEMBLY," naming both Lynn and Melvin Marlon Clarkson as the inventors, and naming Lynn as the Assignee. A copy of the '815 patent is attached hereto as Exhibit C.

16.    In general, the '815 patent relates to a locking collar apparatus (defined in the Exclusive License as the "Apparatus Technology") for affixing a sputter target to a rotatable spindle. The Apparatus Technology is beneficial during the manufacture of sputter targets, and also during the use of a sputter target in a coated-glass manufacturing process.

17.    Heraeus agreed to pay Lynn $3.5 million and also agreed to pay an additional $7.5 million against a conditional note in revenue fees and royalty payments associated with Heraeus' sale of related sputter targets, in part for the exclusive license to the Apparatus Technology covered by the '815 patent, and in part for the trade secret know-how discussed below. The aforementioned amounts were subsequently modified by the Amendments to the Exclusive License (Exhibit B).

18.    Also pursuant to the Exclusive License, Lynn Plasma granted Heraeus, and its affiliates, including Heraeus Inc., an exclusive license to certain trade secret know-how (defined in the Exclusive License as the "Licensed Technology") which includes Lynn Plasma's know-how and technical information regarding the construction, treatment, manufacture and processes related to plasma-spray technology for making sputter targets, and other items, for use in the glass industry.

6

19.    In addition to payments to Lynn for the exclusive license for the Apparatus Technology, Heraeus also agreed to pay a royalty based on the sale, lease or other disposition of products based on the Licensed Technology, the royalties to be applied against the $7.5 million conditional note mentioned above in paragraph 16.

20.    Steven Neighbors ("Neighbors") was employed by Lynn Plasma during the time that Heraeus, Lynn Plasma and Lynn negotiated the Exclusive License. In this regard, Neighbors acted as the negotiation leader on behalf of Lynn and Lynn Plasma during those negotiations regarding the form and substance of the Exclusive License. It is further believed that Lynn charged Neighbors with the duty to negotiate the Exclusive License with Heraeus in order to improve the financial standing of Lynn Plasma, which is believed to have been in financial difficulty at the time of the negotiations. Upon information and belief, Neighbors was also the Vice President of Lynn Plasma during the time of these negotiations, and as such had the apparent and actual authority to act on behalf of Lynn and Lynn Plasma in the negotiations.

21.    While working at Lynn Plasma, Neighbors acquired detailed knowledge of the pending patent application for the Apparatus Technology which later issued as the '815 patent, and of the Licensed Technology. Upon information and belief, Neighbors helped to start the sputter target business at NxEdge in 2003, while still working for Lynn Plasma, and Neighbors is now the Vice President and General Manager of NxEdge.

22.    During the negotiations leading up to the execution of the Exclusive License, Steve Neighbors, as an agent for both Lynn and Lynn Plasma, made several material representations which Heraeus relied upon in its decision to enter into the Exclusive License, and which were false. In brief, Neighbors asserted that Heraeus and Lynn Plasma would give Heraeus continued access to cutting edge plasma spray technology as part of a long-term

7

partnership, and that the Lynn Plasma equipment and plasma spray technology were above industry standards and cost efficient. In addition, Lynn and Lynn Plasma failed to advise Heraeus before entering the Exclusive License that those customers who purchase sputtering targets using the licensed locking collars from Lynn (Apparatus Technology) would require significant modifications on the customer's equipment to accommodate the locking collars. These representations and omissions were intended to induce Heraeus into entering the Exclusive License.

### B.     Heraeus' Implementation Of The Apparatus Technology And The Licensed Technology.

23.     In addition to the Exclusive License, Heraeus Inc. entered into a separate Purchase Agreement (Exhibit B to the Exclusive License) with Lynn Plasma to purchase a Generation III Plasma Spray System ("CARC3") for use at a division of Heraeus Inc. in Chandler, Arizona, doing business as Heraeus MTD. The CARC3 incorporates, and is used in conjunction with, the Licensed Technology in order to manufacture sputter targets which meet certain specifications set forth in the Purchase Agreement.

24.     Pursuant to the Exclusive License, Lynn Plasma also was required to provide the Licensed Technology to Heraeus and to assist Heraeus in implementing that technology in a manner that would allow it to manufacture sputter targets which meet certain specifications set forth in the Exclusive License. Lynn Plasma also represented and warranted in the Exclusive License that the Licensed Technology would cause the CARC3 to function in accordance with the specifications set forth in the Purchase Agreement.

25.     The sputter targets produced by using the Licensed Technology in conjunction with the CARC3 at Heraeus MTD's Chandler facility did not meet the specifications

8

identified in the Exclusive License, for at least the reason that the sputter targets failed to meet required impurity and/or oxygen levels.

26.     Heraeus, Lynn and Lynn Plasma entered into two Amendments to the Exclusive License in an effort to provide further incentive to Lynn and Lynn Plasma to enable the CARC3, in conjunction with the licensed plasma-spray technology, to operate at the Heraeus MTD facility in conformance with the required specifications. True and correct copies of Amendments 1 and 2 to the Exclusive License are attached hereto in Exhibit B and are incorporated herein.

27.     Notwithstanding Lynn and Lynn Plasma's undertakings, and the good faith efforts and cooperation of Heraeus employees, the CARC3 at Heraeus MTD's Chandler facility has yet to fully operate in conformance with the required specifications.

### C.     Heraeus' Rights To Improvements Under The Exclusive License.

28.     The Exclusive License also grants to W.C. Heraeus, and its affiliates, including Heraeus Inc., exclusive rights in any improvements in the silicon aluminum ("Si/Al") plasma spray portion of the Licensed Technology developed by Lynn and Lynn Plasma, and also grants to Heraeus the right of first offer to purchase or license any improvements in any non-Si/Al portion of the Licensed Technology developed by Lynn Plasma.

29.     Upon information and belief, Lynn and Lynn Plasma solely developed, at the Lynn Plasma facility, improvements to the Si/Al plasma spray portion of the Licensed Technology, and also improvements to the Licensed Technology that use a different compound other than Si/Al ("non-Si/Al") to produce sputter targets. Upon information and belief, Lynn and Lynn Plasma implemented aspects of the non-Si/Al improvements in a new generation Plasma Spray System ("CARC4"), which is now being used by NxEdge.

9

30.    Neither Lynn nor Lynn Plasma offered Heraeus the improvements to Si/Al plasma spray portion, in which Heraeus has exclusive rights, nor did Lynn or Lynn Plasma offer Heraeus the right of first offer to purchase or license the non-Si/Al improvements to the Licensed Technology, or to purchase or license the CARC4.

### D.    Defendants' Wrongful Transfer of the Apparatus Technology and of the Licensed Technology.

31.    Upon information and belief, Neighbors left his position with Lynn Plasma in 2003 to establish a company operating under Bainbridge Industries, Inc. ("Bainbridge") and Bainbridge Engineered Solutions & Technology, Inc. ("BEST"), which corporations are believed to be at least partially owned by Doll Capital Management, a venture capital investor. The new company is believed to have conducted business in Idaho under the "Lynn" name. On information and belief, on November 6, 2003, Bainbridge changed its name to NxEdge, Inc., and BEST changed its name to NxEdge Inc. of Boise. On information and belief, Neighbors is currently the Vice President and General Manager of both NxEdge, Inc. and NxEdge Inc. of Boise (hereinafter collectively referred to as "NxEdge").

32.    In addition to Neighbors' departure from Lynn Plasma, several other key ex-employees of Lynn Plasma, including Melvin Marlon Clarkson, the co-inventor of the '815 patent, are now believed to be employed by NxEdge. Upon information and belief, these key ex-employees of Lynn Plasma acquired knowledge of the '815 patent, the Apparatus Technology, and the Licensed Technology while employed at Lynn Plasma.

33.    Upon information and belief, on or about April 1, 2003, NxEdge (under the name NxEdge, or under a predecessor name such as Bainbridge or BEST) wrongfully acquired the CARC3 and the CARC4 from Lynn and Lynn Plasma in violation of the Exclusive

License. Any consideration paid by NxEdge for this wrongful acquisition is now believed to be in the Lynn Estate/Trust.

34.    Upon information and belief, NxEdge (under the name NxEdge, or under a predecessor name such as Bainbridge or BEST) wrongfully acquired the Licensed Technology, including technology implemented in the CARC3, and also the improvements to the Licensed Technology, including Si/Al improvements, non-Si/Al improvements and its implementation in the CARC4, from Lynn and Lynn Plasma for use by NxEdge to produce sputter targets, all in direct violation of the Exclusive License. Any consideration paid by NxEdge for this wrongful acquisition is now believed to be in the Lynn Estate/Trust.

35.    Upon information and belief, NxEdge (under the name NxEdge, or under a predecessor name such as Bainbridge or BEST) wrongfully acquired from Lynn and Lynn Plasma many locking collars which implement the Apparatus Technology, and which are covered by the '815 patent, for use by NxEdge to produce sputter targets, all in direct violation of the Exclusive License. Any consideration paid by NxEdge for this wrongful acquisition is now believed to be in the Lynn Estate/Trust.

36.    Prior to the Exclusive License, Lynn Plasma had entered into a Supply Agreement with Guardian Industries, Corp. ("Guardian") to produce a limited number of sputter targets for Guardian. In view of this pre-existing Supply Agreement, the Exclusive License grants back from Heraeus to Lynn and Lynn Plasma a limited sub-license for the sole purpose of honoring the Supply Agreement with Guardian.

37.    Upon information and belief, Lynn and Lynn Plasma, in direct violation of the Exclusive License, improperly delegated to NxEdge their limited rights and duties under the

11

Exclusive License to produce a limited number of sputter targets pursuant to the Supply Agreement with Guardian.

38.     Upon information and belief, NxEdge, through the actions of Neighbors and others, and through the knowledge gained by Neighbors while working for Lynn Plasma and while negotiating the Exclusive License for Lynn and Lynn Plasma, encouraged, induced and assisted Lynn and Lynn Plasma in the aforementioned violations of the Exclusive License.

39.     Upon information and belief, NxEdge is using the Licensed Technology, including the CARC3 and Si/Al improvements, and also the CARC4 and non-Si/Al improvements, to produce sputter targets, including the production of sputter targets for Guardian.

40.     Upon information and belief, NxEdge is using the Apparatus Technology covered by the '815 patent to produce and/or sell sputter targets for Guardian.

41.     Upon information and belief, NxEdge has offered to sell, or is planning to sell, sputter targets produced by NxEdge using the Licensed Technology, including the CARC3 and the Si/Al improvements, and the CARC4 and the non-Si/Al improvements, to parties other than Guardian within the glass industry.

## COUNT I

### (Breach of Contract Against the Lynn Estate/Trust and Lynn Plasma)

42.     Heraeus repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

43.     This claim for breach of contract is governed by Delaware law.

12

44.    Except as excused by the acts, breaches, and omissions of Lynn and/or Lynn Plasma, Heraeus has performed all conditions, covenants, obligations and promises required on its part to be performed in accordance with the terms and conditions of the Exclusive License.

45.    Provisions of the Exclusive License, including but not limited to articles 4.2, 4.3 and 5.1.3(b), impose on Lynn and Lynn Plasma the obligation to provide Heraeus with, and to assist Heraeus with the implementation of, the Licensed Technology in a manner which enables Heraeus to manufacture sputter targets that meet the required specifications identified in the Exclusive License.

46.    Lynn (now the Lynn Estate/Trust) and Lynn Plasma have breached the Exclusive License by failing to provide Heraeus with, and to assist Heraeus with the implementation of, the Licensed Technology in a manner that enables Heraeus to manufacture sputter targets that meet the required specifications identified in the Exclusive License.

47.    Provisions of the Exclusive License, including but not limited to articles 5.1.2(d) and 5.1.4, and any amendments thereto, set forth representations and warranties by Lynn and Lynn Plasma that the Licensed Technology would enable Heraeus to manufacture Si/Al sputter targets that meet the required specifications identified in the Exclusive License when using the technology equipment.

48.    Lynn (now the Lynn Estate/Trust) and Lynn Plasma have breached the Exclusive License by failing to honor the representations and warranties that the Licensed Technology would enable Heraeus to manufacture Si/Al sputter targets that meet the required specifications identified in the Exclusive License when using the technology equipment.

13

49.    Provisions of the Exclusive License, including but not limited to article 2.1.2, set forth a limited retained right and license in Lynn, and any entity in which Lynn maintains a controlling interest, to use the Apparatus Technology only as necessary to honor the pre-existing Supply Agreement with Guardian.

50.    Lynn (now the Lynn Estate/Trust) and Lynn Plasma breached the Exclusive License by providing NxEdge with the Apparatus Technology covered by the '815 patent, and by engaging in conduct that induced, contributed and assisted NxEdge in the use of the Apparatus Technology, especially when Lynn did not have or maintain a controlling interest in NxEdge, all of which is completely beyond the scope of Lynn's limited retained right in the Apparatus Technology and without permission of Heraeus as exclusive licensee.

51.    Provisions of the Exclusive License, including but not limited to article 3.1.2(c), grant to Lynn Plasma a limited sublicense in the Licensed Technology to produce a limited number of sputter targets to honor the pre-existing Supply Agreement with Guardian.

52.    Lynn Plasma breached the Exclusive License by disclosing to NxEdge the Licensed Technology, and by inducing, contributing and assisting NxEdge in the use of the Licensed Technology, including without limitation the CARC3, to commercially produce sputter targets in the glass industry, all of which is beyond the scope of Lynn's limited sublicense in the Licensed Technology and without permission of Heraeus as exclusive licensee.

53.    Provisions of the Exclusive License, including but not limited to articles 3.3.2 and 3.3.3, grant Heraeus the right to any improvements in the Si/Al plasma spray technology developed by Lynn or Lynn Plasma, and also grant to Heraeus the right of first offer to purchase or license any non-Si/Al improvements in the Licensed Technology developed by Lynn Plasma.

14

54.    Lynn Plasma breached the Exclusive License by failing to provide Heraeus with the rights to Si/Al improvements developed by Lynn or Lynn Plasma, and by failing to provide Heraeus with the right of first offer to purchase or license the non-Si/Al improvements developed by Lynn Plasma, including the CARC4.

55.    Heraeus has been damaged, and continues to be damaged, as a foreseeable and proximate result of Lynn and Lynn Plasma's breaches of the Exclusive License.

**COUNT II**

**(Patent Infringement Against the Lynn Estate/Trust, Lynn Plasma and NxEdge)**

56.    Heraeus repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

57.    Heraeus, as exclusive licensee, brings this cause of action for patent infringement without joinder of Lynn, the licensor, because Lynn is named herein as a defendant for having infringed the very patent that is the subject of the Exclusive License.

58.    Lynn (now the Lynn Estate/Trust), and Lynn Plasma have infringed, and continue to infringe, literally or under the doctrine of equivalents, one or more claims of the '815 patent by the unauthorized manufacture, use, offer to sell, or sale of the Apparatus Technology for the benefit of, or directly to, NxEdge, and/or by inducing or contributing to the infringement of the '815 patent by NxEdge and by others in violation of 35 U.S.C. § 271.

59.    NxEdge has infringed, and continues to infringe, literally or under the doctrine of equivalents, one or more claims of the '815 patent by manufacturing, using, offering to sell or selling the Apparatus Technology, and/or by inducing or contributing to the infringement of the '815 patent by others in violation of 35 U.S.C. § 271.

15

60.   Heraeus is informed and believes, and based thereon alleges, that Lynn (now the Lynn Estate/Trust), Lynn Plasma, and NxEdge have willfully infringed the '815 patent in knowing disregard of Heraeus' exclusive patent rights.

61.   Heraeus has been damaged, and unless defendants are enjoined by the Court, will continue to be damaged by the infringing acts of the Lynn Estate/Trust, Lynn Plasma, and NxEdge.

62.   Heraeus is also entitled to recover enhanced damages and attorneys fees pursuant to 35 U.S.C. §§ 284 and 285.

## COUNT III

**(Trade Secret Misappropriation Against the Lynn Estate/Trust, Lynn Plasma and NxEdge)**

63.   Heraeus repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

64.   Pursuant to the Exclusive License, this claim for misappropriation of trade secrets is governed by Delaware law.

65.   The Licensed Technology is described in the Exclusive License as "highly valuable trade secret information." The improvements to the Licensed Technology, including the non-Si/Al improvements and the CARC4 are similarly considered to be trade secrets. The Licensed Technology, and the improvements thereto, derive independent economic value by being maintained secret from others who can obtain economic value from their disclosure or use.

66.   Heraeus, as the exclusive licensee of the Licensed Technology, as well as its affiliates and representatives, has taken reasonable measures to maintain the secrecy of the Licensed Technology.

16

67.    Heraeus invested significant monies and resources to acquire an exclusive license to the Licensed Technology and the Si/Al improvements thereto, as well as the right of first offer to purchase or license any non-Si/Al improvements. The Licensed Technology, and improvements thereto, are of great commercial importance to Heraeus.

68.    Lynn and Lynn Plasma had, and continue to have, a duty to maintain the secrecy of the Licensed Technology, to which Heraeus has exclusive rights. Lynn and Lynn Plasma also had, and continue to have, a duty not to disclose improvements to the Licensed Technology without prior authorization from Heraeus. Lynn and Lynn Plasma knew or had reason to know, pursuant to the provisions of the Exclusive License, that at the time of their improper disclosure to NxEdge they had a duty to maintain the secrecy, and limit the use, of the Licensed Technology and improvements thereto.

69.    Lynn and Lynn Plasma misappropriated the Licensed Technology, and improvements thereto, by disclosing the Licensed Technology, including the CARC3, and the aforementioned improvements to the Licensed Technology, including the non-Si/Al improvements and the CARC4, to NxEdge without authorization, express or implied, from Heraeus.

70.    NxEdge misappropriated the Licensed Technology, and improvements thereto, by acquiring, using, and inducing, assisting and contributing to Lynn and Lynn Plasma's disclosure of, the Licensed Technology, including the CARC3, and the improvements to the Licensed Technology, including the non-Si/Al improvements and the CARC4, without authorization, express or implied, from Heraeus.

71.    NxEdge knew or had reason to know that its acquisition and use of such trade secrets from Lynn, Lynn Plasma, Neighbors, and/or other ex-employees of Lynn Plasma,

17

was improper. In addition, NxEdge, Neighbors and/or other ex-employees of Lynn Plasma knew or had reason to know at the time of their improper disclosure or use of such trade secrets, that they had a duty to maintain the secrecy and limit the use of the Licensed Technology. Similarly, NxEdge through its officers, employees and agents, knew or had reason to know at the time of NxEdge's use of such trade secrets that it had acquired and derived knowledge of the trade secrets from persons owing a duty to Heraeus to maintain their secrecy or limit their use.

72.    The wrongful disclosures by Lynn and Lynn Plasma, and wrongful acquisition and use by NxEdge, of the Licensed Technology and improvements thereto, constitutes misappropriation of Heraeus' exclusive rights in the Licensed Technology and improvements under the Delaware Uniform Trade Secrets Act, 6 Del. C. § 2001, et seq.

73.    Heraeus has been damaged by this misappropriation, and will continue to be harmed unless the Lynn Estate/Trust, Lynn Plasma, and NxEdge are enjoined by this Court.

74.    The Lynn Estate/Trust, Lynn Plasma, and NxEdge have been, and unless enjoined by the Court, will continue to be, unjustly enriched by their wrongful misappropriation. Heraeus is entitled to recover the full amount of such unjust enrichment. In the event that actual losses and/or unjust enrichment are or become difficult to ascertain or prove, Heraeus is entitled to a reasonable royalty for the entire period of time of Lynn, Lynn Plasma, and NxEdge's misappropriated use of the Licensed Technology.

75.    On information and belief, the misappropriation of the Licensed Technology by Lynn, Lynn Plasma, and NxEdge was willful and malicious. Heraeus is therefore entitled to recover exemplary and punitive damages, as well as reasonable attorneys fees, against the Lynn Estate/Trust, Lynn Plasma, and NxEdge pursuant to 6 Del. C. §§ 2003-2004.

18

## COUNT IV

### (Tortious Interference With Contract Against NxEdge)

76.    Heraeus repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

77.    This claim of tortious interference with contract is governed by Delaware law.

78.    NxEdge, through Vice President Neighbors, and the hiring of ex-employees of Lynn Plasma, had knowledge of the existence of, as well as the terms of, the Exclusive License between Heraeus, Lynn and Lynn Plasma.

79.    NxEdge knew, through at least Neighbors, that the Exclusive License grants to Heraeus an exclusive license to the Apparatus Technology covered by the '815 patent, and to the Licensed Technology within the glass industry, along with improvements thereto.

80.    NxEdge intentionally induced, assisted in, and contributed to Lynn's decision to provide, or to have Lynn Plasma provide, NxEdge with the Apparatus Technology to use in the production of sputter targets at NxEdge. These intentional acts by NxEdge were unjustified, and caused Lynn to breach the Exclusive License.

81.    NxEdge intentionally induced, assisted in, and contributed to Lynn Plasma's decision to disclose and provide to NxEdge, or to have Lynn disclose and provide to NxEdge, the Licensed Technology including the CARC3, and the improvements thereto including the Si/Al improvements, and the non-Si/Al improvements including the CARC4, to use in the production of sputter targets at NxEdge. These intentional acts by NxEdge were unjustified, and caused Lynn Plasma to breach the Exclusive License.

82.    The foregoing intentional acts by NxEdge which have caused breaches of the Exclusive License have resulted in substantial damage to Heraeus in that Heraeus' exclusive rights in the Apparatus Technology covered by the '815 patent and in the Licensed Technology have been substantially diluted in value because of their wrongful use by NxEdge. NxEdge also has wrongfully profited from the wrongful use of the Apparatus Technology and the Licensed Technology.

83.    On information and belief, the foregoing intentional acts by NxEdge were willful and malicious and committed with wanton disregard for Heraeus' exclusive rights under the Exclusive License. Heraeus is therefore entitled to recover exemplary and punitive damages, as well as reasonable attorneys fees, against NxEdge.

## COUNT V

### (Breach Of Implied Covenant Of Good Faith Against the Lynn Estate/Trust and Lynn Plasma)

84.    Heraeus repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

85.    Pursuant to the Exclusive License, this claim of breach of an implied covenant of good faith and fair dealing is governed by Delaware law.

86.    The Exclusive License inherently included an implied covenant of good faith and fair dealing (1) not to cooperate or conspire with a third-party to induce and assist in a breach of the Exclusive License; (2) not to destroy, or dilute, Heraeus' value in its exclusive license to the Apparatus Technology by using, selling or distributing the Apparatus Technology so as to infringe Heraeus' exclusive license in the '815 patent, or by inducing or contributing others to infringe Heraeus' exclusive license in the '815 patent; and (3) not to destroy, or dilute, Heraeus' value in its exclusive license to the Licensed Technology by wrongfully selling,

20

transferring, disclosing, or assisting in the use of the Licensed Technology to a third-party so as to constitute trade secret misappropriation.

87.    Lynn (now the Lynn Estate/Trust) and Lynn Plasma breached the implied covenant of good faith and fair dealing through their deceitful actions and misrepresentations by (1) cooperating and conspiring with NxEdge to induce and assist Lynn and Lynn Plasma to breach the Exclusive License; (2) using, selling or distributing the Apparatus Technology to NxEdge in direct infringement of Heraeus' exclusive license in the '815 patent, and by inducing and/or contributing to NxEdge's infringement of Heraeus' exclusive license in the '815 patent; (3) wrongfully misappropriating the Licensed Technology by selling, transferring, disclosing, and/or assisting in the use of the Licensed Technology to NxEdge; and (4) improperly delegating Lynn Plasma's supply agreement with Guardian.

88.    The foregoing acts by Lynn and Lynn Plasma have caused breaches of the Exclusive License which has resulted in substantial damage to Heraeus, and has caused substantial dilution in the value of Heraeus' exclusive rights in the Apparatus Technology covered by the '815 patent and in the Licensed Technology.  Lynn and Lynn Plasma have also wrongfully profited from these wrongful acts.

## COUNT VI

### (Civil Conspiracy to Breach Contract, Infringe Patent and Misappropriate Trade Secrets Against the Lynn Estate/Trust, Lynn Plasma and NxEdge)

89.    Heraeus repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

90.    Pursuant to the Exclusive License, this claim of civil conspiracy to breach the Exclusive License, infringe the Apparatus Technology, and misappropriate the Licensed Technology is governed by Delaware law.

21

91.     Heraeus alleges that Lynn, Lynn Plasma, and NxEdge, through its officer and agent Steve Neighbors, combined and conspired on or about April 1, 2003, (1) to have Lynn and Lynn Plasma breach the Exclusive License with Heraeus by knowingly violating Heraeus' exclusive license in the Apparatus Technology and in the Licensed Technology; (2) to have Lynn sell and/or distribute the Apparatus Technology to NxEdge, and to have NxEdge use the Apparatus Technology, all in direct infringement of Heraeus' exclusive license in the '815 patent; (3) to wrongfully misappropriate the Licensed Technology by selling, transferring, and/or disclosing the Licensed Technology from Lynn and Lynn Plasma to NxEdge, and by having Lynn, Lynn Plasma and NxEdge cooperate so as to enable NxEdge to use the Licensed Technology in the commercial manufacturing of sputter targets in the glass industry; and (4) to improperly delegate Lynn Plasma's supply agreement with Guardian.

92.     The foregoing wrongful acts performed by Lynn, Lynn Plasma and NxEdge, in combination and with mutual cooperation, have caused breaches of the Exclusive License which has resulted in substantial damage to Heraeus, and have caused substantial dilution in the value of Heraeus' exclusive rights in the Apparatus Technology covered by the '815 patent and in the Licensed Technology.   Lynn, Lynn Plasma and NxEdge have also wrongfully profited from these wrongful acts.


## COUNT VII

**(Fraudulent Inducement Against the Lynn Estate/Trust and Lynn Plasma)**

93.     Heraeus repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

94.     This claim for fraudulent inducement is governed by Delaware law.

22

95.     During negotiations leading up to execution of the Exclusive License, Steve Neighbors, as an agent for Lynn and for Lynn Plasma, made several material misrepresentations with the intent to deceive and induce Heracus into entering the Exclusive License, and Heraeus reasonably relied upon these representations when it entered into the Exclusive License, to the subsequent detriment of Heraeus.   Heraeus sets forth below the material misrepresentations known to Heraeus at this time.   Heraeus reserves the right to supplement these allegations as additional material misrepresentations are discovered.

96.     On October 26, 2001, Steve Neighbors sent a letter, on behalf of Lynn and Lynn Plasma, to Jeff Statt, an employee of Heraeus who was active in negotiating the Exclusive License.   In that October 26th letter, Neighbors stated that "Lynn is amazed at how well the partnership fit would work with Heraeus", "[t]he partnership between Lynn and Heraeus is an excellent match", and "Lynn has determined that a single-focused partnership with Heraeus would be the best option for Lynn, for Heraeus, and for the industry in whole."   In that same letter, Neighbors further stated that Lynn has "[i]nventive nature and  pipeline access to new techniques, equipment and coatings, which will keep Lynn – and its partner(s) – at the cutting edge of the marketplace."   Neighbors made these representations with the knowledge that they were false, or with reckless disregard as to their truth, and with the intent to induce Heraeus into entering the Exclusive License.

97.     Heraeus reasonably relied upon the statements described in the above paragraph as material reasons to enter into the Exclusive License, to the detriment of Heraeus, reasonably believing that Heraeus was entering into a long-term relationship with Lynn and Lynn Plasma to continuously receive new, cutting-edge techniques and processes for the production of sputter targets in the glass industry.   In addition, the above-described statements by

Neighbors contributed to inducing Heraeus to agree to Article 3.1.2(c) of the Exclusive License regarding Lynn Plasma's manufacture products, because Heraeus reasonably believed that it was entering into a long-term relationship with Lynn and Lynn Plasma.    The aforementioned representations by Neighbors were false because (1) on or about April 1, 2003, a little more than a year after entering into the Exclusive License, Lynn Plasma ceased operations and improperly provided the Apparatus Technology and the Licensed Technology to a new company formed by Neighbors (later known as NxEdge); (2) Heraeus was never provided with new, cutting-edge techniques and processes for the production of sputter targets in the glass industry; and (3) the Apparatus Technology and the Licensed Technology are now improperly being used by NxEdge, a competitor in the industry.

98.    In the aforementioned October 26, 2001, letter from Steve Neighbors, he also stated that Lynn had "proprietary knowledge of equipment that allows it [to] perform above industry standards, and cost-effectively at the same time", and that, in a partnership with Lynn Plasma and Lynn, "Heraeus would have every possible target option, with unmatchable performance." Neighbors made these representations with the knowledge that they were false, or with reckless disregard as to their truth, and with the intent to induce Heraeus into entering the Exclusive License.

99.    Heraeus reasonably relied upon the statements described in the above paragraph as material reasons to enter into the Exclusive License, to the detriment of Heraeus, reasonably believing that licensing the Apparatus Technology and the Licensed Technology would enable Heraeus to use the equipment (CARC3) purchased form Lynn Plasma to produce sputtering targets having a quality above industry standards and having unmatchable performance in the industry.    The aforementioned representations by Neighbors were false

24

because Lynn Plasma's proprietary knowledge of the plasma spray process that was licensed to Heraeus was a process that produced sputtering targets which did not meet industry standards and which was not cost effective. Specifically, the process technology provided by Lynn Plasma was not sufficient to produce sputtering targets meeting the impurity specifications identified in the Exclusive License, much less meeting industry standards. Heraeus had to invest substantial additional money and resources to further develop the plasma spray process so that it would produce sputtering targets with improved impurity levels. The representation by Neighbors that the targets produced by Lynn Plasma's licensed process would have "unmatchable performance" was incorrect.

100.    In an e-mail, dated October 23, 2001, from Steve Neighbors to Bernd Stenger, an employee of Heraeus who was active in negotiating the Exclusive License, Neighbors stated that when producing a sputtering target using Lynn Plasma's plasma spray technology and equipment "[t]he costs can be as low as $2000 per tube for labor and materials (not $3000), depending on your sources, shipping, etc." Neighbors also stated in the October 23rd e-mail that "we anticipate up to two targets per 24 hr period with the new Gen 3 carc." Neighbors made these representations with the knowledge that they were false, or with reckless disregard as to their truth, and with the intent to induce Heraeus into entering the Exclusive License.

101.    Heraeus reasonably relied upon the statements described in the above paragraph as material reasons to enter into the Exclusive License, to the detriment of Heraeus, reasonably believing that the licensed plasma spray technology, in conjunction with the equipment (CARC3) purchased form Lynn Plasma, would enable Heraeus to produce sputtering targets in a cost effective manner and at a rate of two targets per day. The aforementioned

representations by Neighbors were false because (1) the labor and material costs for producing a sputtering target using Lynn Plasma's plasma spray technology and equipment were found to be much higher than $2000; and (2) the Lynn Plasma equipment and plasma spray technology did not enable Heraeus to produce more than one target per day.

102.    In a letter from Kevin Williams to Mark Lynn and Steve Neighbors, dated November 21, 2001, Kevin Williams expressed his concerns about the level of development of the plasma spray process and equipment at Lynn Plasma, which Kevin Williams had inspected while visiting the Lynn Plasma facility.  Steve Neighbors responded by writing an e-mail, dated November 22, 2001, to Kevin Williams, in which Steve Neighbors stated that "[w]e did not understand that the intent of the meeting was any knowledge transfer ..." and that "I actually primed Lynn personnel to be vague and non-specific on either equipment or recipe."  Neighbors made these representations with the knowledge that they were false, or with reckless disregard as to their truth, and with the intent to induce Heraeus into entering the Exclusive License.

103.    Heraeus reasonably relied upon the statements described in the above paragraph as material reasons to enter into the Exclusive License, to the detriment of Heraeus, reasonably believing that there was a complete and developed plasma spray process that Lynn Plasma was going to license to Heraeus for the production of sputtering targets.   The aforementioned representations by Neighbors were false because once the Exclusive License was entered into and the plasma spray technology was transferred from Lynn Plasma to Heraeus, it quickly became apparent that Lynn Plasma's plasma spray technology was incomplete and undeveloped and did not enable Heraeus to produce sputtering targets for sale in the industry.

104.    In the October 26, 2001, letter from Steve Neighbors to Jeff Statt, Steve Neighbors discussed the use of its patented locking collars covered by the Apparatus

Technology, and stated that "Lynn is in the process of qualifying the ends and its targets at BOC and thus possibly with Cardinal. That qualification should be done by this time next week." Neighbors made these representations with the knowledge that they were false, or with reckless disregard as to their truth, and with the intent to induce Heraeus into entering the Exclusive License.

105.    Heraeus reasonably relied upon the statements described in the above paragraph as material reasons to enter into the Exclusive License, to the detriment of Heraeus, reasonably believing that the locking collars would be acceptable to customers in the glass industry. In addition, the above-described statements by Neighbors contributed to inducing Heraeus to agree to Article 3.1.2(c) of the Exclusive License regarding Lynn Plasma's manufacture of products, because Heraeus reasonably believed that qualification of the locking collars and targets by BOC and Cardinal would be completed in the very near future and would result in a large market requirement for targets produced by Heraeus. The aforementioned representations by Neighbors were false because, after entering into the Exclusive License, Heraeus discovered that each customer's manufacturing equipment required significant modifications to enable it to use Lynn's patented locking collars which were licensed to Heraeus, and because the market for the sale of targets by Heraeus to BOC and Cardinal did not materialize.

106.    The aforementioned material misrepresentations were reasonably relied upon by Heraeus and induced Heraeus into entering the Exclusive License with Lynn and Lynn Plasma. The subsequent discovery of the falsity of these representations has caused Heraeus significant harm.

## COUNT VIII

### (Negligent Misrepresentation Against the Lynn Estate/Trust and Lynn Plasma)

107.    Heraeus repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

108.    This claim for negligent misrepresentation is governed by Delaware law.

109.    During negotiations leading up to execution of the Exclusive License, Steve Neighbors, as an agent for Lynn and for Lynn Plasma, made several material misrepresentations with the intent to induce Heraeus into entering the Exclusive License, and Heraeus reasonably relied upon these representations when it entered into the Exclusive License, to the subsequent detriment of Heraeus.    Heraeus sets forth below the material misrepresentations known to Heraeus at this time.    Heraeus reserves the right to add more allegations of in the event that additional material misrepresentations are discovered.

110.    On October 26, 2001, Steve Neighbors sent a letter, on behalf of Lynn and Lynn Plasma, to Jeff Statt, an employee of Heraeus who was active in negotiating the Exclusive License.  In that October 26th letter, Neighbors stated that "Lynn is amazed at how well the partnership fit would work with Heraeus", "[t]he partnership between Lynn and Heraeus is an excellent match", and "Lynn has determined that a single-focused partnership with Heraeus would be the best option for Lynn, for Heraeus, and for the industry in whole."  In that same letter, Neighbors further stated that Lynn has "[i]nventive nature and  pipeline access to new techniques, equipment and coatings, which will keep Lynn – and its partner(s) – at the cutting edge of the marketplace."  At the time Neighbors made these representations, he either knew or should have known of their falsity, or did not know of their truthfulness or falsity, and the representations were made with the intent to induce Heraeus into entering the Exclusive License.

28

111.    Heraeus reasonably relied upon the statements described in the above paragraph as material reasons to enter into the Exclusive License, to the detriment of Heraeus, reasonably believing that Heraeus was entering into a long-term relationship with Lynn and Lynn Plasma to continuously receive new, cutting-edge techniques and processes for the production of sputter targets in the glass industry.  In addition, the above-described statements by Neighbors contributed to inducing Heraeus to agree to Article 3.1.2(c) of the Exclusive License regarding Lynn Plasma's manufacture of products, because Heraeus reasonably believed that it was entering into a long-term relationship with Lynn and Lynn Plasma.  The aforementioned representations by Neighbors were false because (1) on or about April 1, 2003, a little more than a year after entering into the Exclusive License, Lynn Plasma ceased operations and improperly provided the Apparatus Technology and the Licensed Technology to a new company formed by Neighbors (later known as NxEdge); (2) Heraeus was never provided with new, cutting-edge techniques and processes for the production of sputter targets in the glass industry; and (3) the Apparatus Technology and the Licensed Technology are now improperly being used by NxEdge, a competitor in the industry.

112.    In the aforementioned October 26, 2001, letter from Steve Neighbors, he also stated that Lynn had "proprietary knowledge of equipment that allows it [to] perform above industry standards, and cost-effectively at the same time", and that, in a partnership with Lynn Plasma and Lynn, "Heraeus would have every possible target option, with unmatchable performance."  At the time Neighbors made these representations, he either knew or should have known of their falsity, or did not know of their truthfulness or falsity, and the representations were made with the intent to induce Heraeus into entering the Exclusive License.

113. Heraeus reasonably relied upon the statements described in the above paragraph as material reasons to enter into the Exclusive License, to the detriment of Heraeus, reasonably believing that licensing the Apparatus Technology and the Licensed Technology would enable Heraeus to use the equipment (CARC3) purchased form Lynn Plasma to produce sputtering targets having a quality above industry standards and having unmatchable performance in the industry. The aforementioned representations by Neighbors were false because Lynn Plasma's proprietary knowledge of the plasma spray process that was licensed to Heraeus was a process that produced sputtering targets which did not meet industry standards and which was not cost effective. Specifically, the process technology provided by Lynn Plasma was not sufficient to produce sputtering targets meeting the impurity specifications identified in the Exclusive License, much less meeting industry standards. Heraeus had to invest substantial additional money and resources to further develop the plasma spray process so that it would produce sputtering targets with improved impurity levels. The quality of the sputtering targets produced by Lynn Plasma's licensed spray plasma process was clearly outmatched by competitors in the industry.

114. In an e-mail, dated October 23, 2001, from Steve Neighbors to Bernd Stenger, an employee of Heraeus who was active in negotiating the Exclusive License, Neighbors stated that when producing a sputtering target using Lynn Plasma's plasma spray technology and equipment "[t]he costs can be as low as $2000 per tube for labor and materials (not $3000), depending on your sources, shipping, etc." Neighbors also stated in the October 23rd e-mail that "we anticipate up to two targets per 24 hr period with the new Gen 3 carc." At the time Neighbors made these representations, he either knew or should have known of their

falsity, or did not know of their truthfulness or falsity, and the representations were made with the intent to induce Heraeus into entering the Exclusive License.

115.    Heraeus reasonably relied upon the statements described in the above paragraph as material reasons to enter into the Exclusive License, to the detriment of Heraeus, reasonably believing that the licensed plasma spray technology, in conjunction with the equipment (CARC3) purchased form Lynn Plasma, would enable Heraeus to produce sputtering targets in a cost effective manner and at a rate of two targets per day.  The aforementioned representations by Neighbors were false because (1) the labor and material costs for producing a sputtering target using Lynn Plasma's plasma spray technology and equipment were found to be much higher than $2000; and (2) the Lynn Plasma equipment and plasma spray technology did not enable Heraeus to produce more than one target per day.

116.    In a letter from Kevin Williams to Mark Lynn and Steve Neighbors, dated November 21, 2001, Kevin Williams expressed his concerns about the level of development of the plasma spray process and equipment at Lynn Plasma, which Kevin Williams had inspected while visiting the Lynn Plasma facility.  Steve Neighbors responded by writing an e-mail, dated November 22, 2001, to Kevin Williams, in which Neighbors reassured Williams by stating that "[w]e did not understand that the intent of the meeting was any knowledge transfer …" and that "I actually primed Lynn personnel to be vague and non-specific on either equipment or recipe." At the time Neighbors made these representations, he either knew or should have known of their falsity, or did not know of their truthfulness or falsity, and the representations were made with the intent to induce Heraeus into entering the Exclusive License.

117.    Heraeus reasonably relied upon the statements described in the above paragraph as material reasons to enter into the Exclusive License, to the detriment of Heraeus,

31

reasonably believing that there was a complete and developed plasma spray process that Lynn Plasma was going to license to Heraeus for the production of sputtering targets.    The aforementioned representations by Neighbors were false because once the Exclusive License was entered into and the plasma spray technology was transferred from Lynn Plasma to Heraeus, it quickly became apparent that Lynn Plasma's plasma spray technology was incomplete and undeveloped and did not enable Heraeus to produce sputtering targets for sale in the industry.

118.    In the October 26, 2001, letter from Steve Neighbors to Jeff Statt, Steve Neighbors discussed the use of its patented locking collars covered by the Apparatus Technology, and stated that "Lynn is in the process of qualifying the ends and its targets at BOC and thus possibly with Cardinal.    That qualification should be done by this time next week."   At the time Neighbors made these representations, he either knew or should have known of their falsity, or did not know of their truthfulness or falsity, and the representations were made with the intent to induce Heraeus into entering the Exclusive License.

119.    Heraeus reasonably relied upon the statements described in the above paragraph as material reasons to enter into the Exclusive License, to the detriment of Heraeus, reasonably believing that the locking collars would be acceptable to customers in the glass industry.    In addition, the above-described statements by Neighbors contributed to inducing Heraeus to agree to Article 3.1.2(c) of the Exclusive License regarding Lynn Plasma's manufacture of products, because Heraeus reasonably believed that qualification of the locking collars and targets by BOC and Cardinal would be completed in the very near future and would result in a large market requirement for targets produced by Heraeus.    The aforementioned representations by Neighbors were false because, after entering into the Exclusive License, Heraeus discovered that each customer's manufacturing equipment required significant

32

modifications to enable it to use Lynn's patented locking collars which were licensed to Heraeus, and because the market for the sale of targets by Heraeus to BOC and Cardinal did not materialize.

120.    The aforementioned material misrepresentations were reasonably relied upon by Heraeus and induced Heraeus into entering the Exclusive License with Lynn and Lynn Plasma. The falsity of these representations has caused Heraeus significant harm.


## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff Heraeus prays for the following relief against defendants Lynn (now the Lynn Estate/Trust), Lynn Plasma, and NxEdge as follows:

(a)    That this Court adjudge and decree that Lynn (now the Lynn Estate/Trust) and Lynn Plasma have breached, and are currently in breach of, the Exclusive License with Heraeus;

(b)    That this Court award damages to Heraeus in an amount to be established at trial to compensate Heraeus for Lynn (now the Lynn Estate/Trust) and Lynn Plasma's breach of the Exclusive License with Heraeus;

(c)    That this Court award attorneys fees and costs to Heraeus pursuant to the provisions of the Exclusive License;

(d)    That this Court adjudge and decree that Lynn (now the Lynn Estate/Trust), Lynn Plasma and NxEdge have infringed one or more claims of the '815 patent;

(e)    That this Court enter a permanent injunction enjoining Lynn (now the Lynn Estate/Trust), Lynn Plasma, and NxEdge from the unauthorized making, using, selling, offering to sell, or importing of any products which incorporate the Apparatus Technology claimed in the '815 patent, and from contributing or inducing others to make, use, sell, offer to sell, or import any products incorporating the Apparatus Technology claimed in the '815 patent;

(f)    That this Court award damages to Heraeus under 35 U.S.C. § 284 in an amount to be established at trial to compensate Heraeus for infringement of the '815 patent by Lynn (now the Lynn Estate/Trust), Lynn Plasma and NxEdge, including damages based on lost profits, together with pre-judgment and post-judgment interest;

(g)    That this Court treble said infringement damages under 35 U.S.C. § 284;

(h)    That this Court award attorneys fees and costs under 35 U.S.C. § 285;

(i)    That this Court adjudge and decree that Lynn (now the Lynn Estate/Trust), Lynn Plasma and NxEdge have misappropriated the Licensed Technology, and the improvements thereto;

(j)    That this Court enter a permanent injunction enjoining Lynn (now the Lynn Estate/Trust), Lynn Plasma, and NxEdge from any further unauthorized disclosure or use of the Licensed Technology, including the unauthorized use of the CARC3 and CARC4 by NxEdge to produce sputter targets;

(k)    That this Court award damages to Heraeus under the Delaware Uniform Trade Secrets Act, 6 Del. C. § 2003(a) in an amount to be established at trial to compensate Heraeus for the misappropriation of the Licensed Technology, and the improvements thereto, by Lynn (now the Lynn Estate/Trust), Lynn Plasma and NxEdge, including an award of unjust enrichment damages, together with pre-judgment and post-judgment interest;

(l)    That this Court double the damages for misappropriation under the Delaware Uniform Trade Secrets Act, 6 Del. C. § 2003(b);

(m)    That this Court award attorneys fees and costs under the Delaware Uniform Trade Secrets Act, 6 Del. C. § 2004;

(n)    That this Court adjudge and decree that NxEdge has intentionally and unjustifiably interfered with Heraeus' rights in the Exclusive License;

(o)    That this Court award damages to Heraeus in an amount to be established at trial to compensate Heraeus for NxEdge's intentional and unjustifiable interference with Heraeus' rights in the Exclusive License, together with pre-judgment and post-judgment interest;

(p)      That this Court award exemplary and punitive damages, and attorneys fees and costs, to Heraeus for NxEdge's willful interference with Heraeus' rights in the Exclusive License;

(q)      That this Court adjudge and decree that Lynn (now the Lynn Estate/Trust) and Lynn Plasma have breached one or more implied covenants of good faith and fair dealing with respect to the Exclusive License;

(r)      That this Court award damages to Heraeus in an amount to be established at trial to compensate Heraeus for Lynn (now the Lynn Estate/Trust) and Lynn Plasma's breach of one or more implied covenants of good faith and fair dealing, together with pre-judgment and post-judgment interest;

(s)      That this Court award exemplary and punitive damages, and attorneys fees and costs, to Heraeus for Lynn (now the Lynn Estate/Trust) and Lynn Plasma's breach of one or more implied covenants of good faith and fair dealing;

(t)      That this Court adjudge and decree that Lynn (now the Lynn Estate/Trust), Lynn Plasma and NxEdge have engaged in a civil conspiracy to breach the Exclusive License, infringe the Apparatus Technology, and misappropriate the Licensed Technology;

(u)      That this Court award damages to Heraeus in an amount to be established at trial to compensate Heraeus for Lynn (now the Lynn Estate/Trust), Lynn Plasma and NxEdge's engagement in a civil conspiracy against Heraeus, together with pre-judgment and post-judgment interest;

(v)      That this Court award exemplary and punitive damages, and attorneys fees and costs, to Heraeus for Lynn (now the Lynn Estate/Trust), Lynn Plasma and NxEdge's engagement in a civil conspiracy against Heraeus;

(w)      That this Court award Heraeus such other relief that the Court deems just and proper;

      (x)     That this Court adjudge and decree that Lynn (now the Lynn Estate/Trust) and Lynn Plasma induced, fraudulently and/or negligently, through material misrepresentations, Heraeus into entering the Exclusive License; and

      (y)     That this Court rescind the Exclusive License between Lynn, Lynn Plasma and Heraeus, or, in the alternative, award damages to Heraeus for the harm suffered by Heraeus as a result of the misrepresentations.

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/ Leslie A. Polizoti*

Karen Jacobs Louden (#2881)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
Attorneys for Plaintiffs W.C. Heraeus GmbH and
Heraeus Incorporated

OF COUNSEL:

Fay Morisseau
Mark Itri
Dennis Duchene
McDERMOTT WILL & EMERY LLP
18191 Von Karman Ave., Suite 400
Irvine, California 92612
(949) 851-0633
(949) 851-9348

May 31, 2005