## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| W.C. HERAEUS GMBH & CO. KG, and W.C. HERAEUS, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Civil Action No. 04-904 (KAJ) |
| MARJORIE JOY LYNN, LYNN PLASMA, INC., and NXEDGE, INC., and NXEDGE INC. OF BOISE, | ) ) ) ) ) |
| Defendants. | ) ) |

## ANSWER AND COUNTERCLAIMS OF NXEDGE, INC. TO SECOND AMENDED COMPLAINT

Defendants NxEdge, Inc. and NxEdge Inc. of Boise (collectively, "NxEdge") hereby answer the complaint of W.C. Heraeus GMBH & Co. and Heraeus Incorporated (collectively, "Heraeus") as follows. The numbered paragraphs below respond to the same numbered paragraphs in the complaint.

1.  NxEdge admits only that this action purports to involve an Exclusive License and rights under a patent, but denies any wrongdoing giving rise to such action.

2.  NxEdge lacks information sufficient to admit the truth or falsity of the allegations of paragraph 2.

3.  NxEdge lacks information sufficient to admit the truth or falsity of the allegations of paragraph 3.

4.  Admitted.

5.  Admitted.

1

6. NxEdge admits the first sentence of Paragraph 6 of the complaint. NxEdge denies that Steve Neighbors was an employee of Lynn Plasma, but admits that Neighbors was give the title of Vice President of Lynn Plasma and is presently Vice President and General Manager of NxEdge Inc. of Boise (hereinafter, "NxEdge").

7. Admitted.

8. NxEdge admits that the complaint purports to state a claim under the Patent Laws, but denies any wrongdoing giving rise to such a claim.

9. NxEdge admits that this Court has subject matter jurisdiction over the patent infringement claim, but denies the remaining allegations of paragraph 9

10. This paragraph contains no allegations against NxEdge.

11. Admitted.

12. Admitted.

13. Admitted.

14. NxEdge lacks information sufficient to admit the truth or falsity of the allegations related to the reason Heraeus entered into the Exclusive License. NxEdge further answers that the Exclusive License speaks for itself as to the terms it contains.

15. The Exclusive License speaks for itself as to the terms it contains.

16. Admitted.

17. NxEdge denies that any trade secrets were transferred, and further answers that the Exclusive License speaks for itself as to the terms it contains.

18. NxEdge denies that any trade secrets were transferred, and further answers that the Exclusive License speaks for itself as to the terms it contains.

19. The Exclusive License speaks for itself as to the terms it contains.

20. NxEdge denies that Steve Neighbors was an employee of Lynn Plasma at any time. NxEdge admits that Neighbors was given actual authority and did negotiate the Exclusive License on behalf of Lynn Plasma, and that Neighbors was given the title of Vice President of Lynn Plasma. NxEdge denies all other allegations of paragraph 20.

21. NxEdge admits the allegations of the first sentence of paragraph 21. Neighbors further admits only that he is now the Vice President and General Manager of NxEdge and that he helped start the sputter target business at NxEdge, but denies all remaining allegations of paragraph 21.

22. NxEdge lacks information as to whether Heraeus relied on any particular statements in entering into the Exclusive License, and therefore denies the allegations of paragraph 22. In addition, NxEdge denies the allegations of paragraph 22 in that the Exclusive License expressly states that Heraeus is not relying on any such statements.

23. NxEdge denies any implication that the Licensed Technology must meet any particular specifications, but admits the remainder of paragraph 23.

24. The Exclusive License speaks for itself as to the terms it contains.

25. The allegations of paragraph 25 are vague in that they appear to refer to all sputter targets and do not differentiate between the original and amended specifications in the Exclusive License. Accordingly, NxEdge lacks information sufficient to ascertain the truth or falsity of the allegations of paragraph 25.

26. NxEdge admits only that the parties entered into two Amendments and that the Amendments speak for themselves as to the terms they contain. All remaining allegations are denied.

27. NxEdge lacks information sufficient to ascertain the truth or falsity of the allegations of paragraph 27.

28. The Exclusive License speaks for itself as to the terms it contains.

29. Denied.

30. NxEdge denies any implication that there are any "improvements" within the meaning of the Exclusive License, and therefore denies the allegations of paragraph 30.

31. NxEdge denies the first sentence of paragraph 31. NxEdge admits the remainder of paragraph 31.

32. NxEdge admits only that Mr. Clarkson and certain other former Lynn Plasma employees are now employed by NxEdge, and that those employees had knowledge regarding the '815 patent and sputter targets before joining NxEdge. NxEdge denies all remaining allegations of paragraph 32.

33. Denied.

34. Denied.

35. Denied.

36. NxEdge admits the first sentence of paragraph 36. The Exclusive License speaks for itself as to the terms it contains.

37. Denied.

38. Denied.

39. NxEdge admits only that it is producing sputter targets for Guardian, and denies all remaining allegations of paragraph 39.

40. NxEdge admits only that it is using an apparatus for affixing tubes to be coated within its coating machinery, and denies the legal conclusions asserted within paragraph 40.

41. NxEdge admits only that it has informed Heraeus that it may sell sputter targets to parties other than Guardian, but denies all remaining allegations of paragraph 41.

## Count I

42-54. The allegations contained in these paragraphs are not asserted against NxEdge, and no answer is required.

## Count II

55. NxEdge repeats its answers to the complaint as set forth above.

56. NxEdge admits that Lynn is named as a defendant, but denies that the claim against Lynn has merit, and further denies that Heraeus has standing to assert this claim for patent infringement against NxEdge without joining Lynn as a party plaintiff.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

## Count III

62. NxEdge repeats its answers to the complaint as set forth above.

63. Paragraph 63 of the complaint is a question of law that requires no answer.

64. NxEdge denies the allegations of the first sentence of paragraph 64. NxEdge denies that there are any "improvements" to the Licensed Technology within the meaning of the Exclusive License, and therefore denies the remaining allegations of paragraph 64.

65. NxEdge lacks information sufficient to ascertain the truth or falsity of the allegations of paragraph 64.

66. NxEdge lacks information sufficient to ascertain the truth or falsity of the allegations of paragraph 65.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

71. Denied.

72. Denied.

73. Denied.

74. Denied.

## Count IV

75. NxEdge repeats its answers to the complaint as set forth above.

76. Paragraph 76 of the complaint is a question of law that requires no answer.

77. NxEdge admits only that it was aware of the Exclusive License and its terms, and denies the remaining allegations of paragraph 77.

78. NxEdge admits only that it was aware of the Exclusive License and its terms, and denies the remaining allegations of paragraph 78.

79. Denied.

80. Denied.

81. Denied.

82. Denied.

## Count V

83-87. The allegations contained in these paragraphs are not asserted against NxEdge, and no answer is required.

## Count VI

88. NxEdge repeats its answers to the complaint as set forth above.

89. The Exclusive License speaks for itself as to the terms it contains.

90. Denied.

91. Denied.

## Count VII

92-105. The allegations contained in these paragraphs are not asserted against NxEdge, and no answer is required.

## Count VIII

106-119. The allegations contained in these paragraphs are not asserted against NxEdge, and no answer is required.

## Affirmative Defenses

NxEdge asserts the following affirmative defenses:

1. **Lack of Standing**. Heraeus lacks standing to assert claims against NxEdge, including the claim for patent infringement. Heraeus is not the owner of the

patent, and the Exclusive License expressly requires Heraeus to jointly agree with Lynn before bringing any action for patent infringement.

2. **Covenant not to sue**. Lynn, the owner of the '815 patent, has granted NxEdge a covenant not to sue NxEdge under the patent. The covenant not to sue prevents Heraeus from asserting the claim for patent infringement.

3. **License/Patent Exhaustion**. To the extent NxEdge is using any devices covered by the '815 patent, NxEdge properly acquired them from a party having valid rights to them. Heraeus cannot assert a claim for patent infringement for the use of such devices.

4. **No Trade Secrets**. None of the spray technology acquired by NxEdge and subject to the Exclusive License constitutes a trade secret. Moreover, Heraeus has failed to identify any trade secrets with particularity.

5. **Unclean Hands**. Heraeus has itself breached the Exclusive License and otherwise acted wrongfully with respect to the manufacture and sale of sputter targets, and should be denied any relief under the doctrine of unclean hands.

6. **Noninfringement**. NxEdge has not infringed the '815 patent.

7. **Accord and Satisfaction**. The parties to the Exclusive License discussed whether the licensed technology performed adequately, and renegotiated the agreement in order to resolve any differences. The renegotiation amounts to an accord and satisfaction of any claim by Heraeus that the technology transferred under the Exclusive License was deficient in any way.

8.  **No wrongful conduct**. Even if Lynn or Lynn Plasma have breached the Exclusive License, NxEdge's conduct in purchasing assets of Lynn Plasma was not wrongful and cannot constitute interference with contract or business expectancy.

9.  **Waiver, license, acquiescence, and estoppel**. Principals at Heraeus knew at all relevant times that Lynn Plasma was seeking to sell its assets or the entire company, and that such a transfer would include all technology required to produce sputter targets for Guardian. As such, the parties specifically negotiated provisions within the Exclusive License that would allow Lynn Plasma to conduct such a transaction without breaching the Exclusive License. Moreover, Heraeus knew of the transaction at all relevant times. Heraeus is prevented from asserting its claims under the doctrines of waiver, license, acquiescence, and estoppel.

## Prayer for Relief

Wherefore, NxEdge requests that the Court:

1. Dismiss the complaint with prejudice;
2. Enter judgment in favor of NxEdge;
3. Deny all relief requested by Heraeus;
4. Award NxEdge its reasonable attorneys' fees and costs; and
5. Award such other and further relief as the Court may deem just and proper.

## Jury Demand

NxEdge demands a jury trial.

## Counterclaims

NxEdge asserts the following counterclaims against W.C. Heraeus GmbH & Co. KG and Heraeus Incorporated.

1.      W. C. Heraeus GmbH & Co. KG, is believed to be a limited liability company organized and existing under the laws of the Federal Republic of Germany, with a principal place of business in Hanau, Federal Republic of Germany. W.C. Heraeus is believed to be owned by Heraeus Holding GmbH, organized and existing under the laws of the Federal Republic of Germany.

2.      Heraeus Incorporated is believed to be a corporation organized and existing under the laws of Delaware, with a principal place of business in New York, New York. Heraeus is believed to be owned by Heraeus Holding GmbH and managed by W.C. Heraeus.

3.      At all relevant times, the counter-claim defendants were working in concert with one another and with full knowledge and approval of the others' actions. Accordingly, throughout these counterclaims, the Heraeus entities are collectively referred to as "Heraeus."

4.      This Court has jurisdiction over these counterclaims under 28. U.S.C. § 1367.

5.      As a Delaware corporation, this Court has jurisdiction over Heraeus, Inc. Moreover, Heraeus subjected itself to the jurisdiction of this Court in asserting the claims contained in the complaint. Jurisdiction over the Heraeus counterclaim defendants is proper in this Court.

6.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c), and because Heraeus submitted itself to the venue of this Court under the Exclusive License.

**Count I  Breach of Contract (Exclusive License)**

7. Prior to entering into the Exclusive License with Heraeus, Lynn Plasma had entered into an agreement with Guardian (the "Guardian Agreement") in which Lynn Plasma agreed to manufacture cylindrical sputter targets for sale to Guardian.

8. At all relevant times, including before Lynn Plasma and Heraeus entered into the Exclusive License, Heraeus was aware of the Guardian Agreement. Heraeus was also aware that Lynn Plasma was itself on the market, either as a sale of its assets or a sale of itself as a company.

9. Because the parties knew and understood that Lynn Plasma or its assets would be sold during the term of the Exclusive License and the term of the Guardian Agreement, the Exclusive License expressly allows a third party other than Lynn Plasma to use technology obtained from Lynn Plasma in order to fulfill Lynn Plasma's obligations to Guardian. The Exclusive Agreement further allows either party to assign its rights and/or delegate its duties, in whole or in part, to a qualified purchaser of all or substantially all of the business of a party, or that portion of the business that is related to sputter targets.

10. After entering into the Exclusive License, Lynn Plasma sold certain assets and substantially all of its business related to the sale of sputter targets to NxEdge. Lynn Plasma also reached an agreement with NxEdge in which NxEdge would produce sputter targets to satisfy the Guardian Agreement.

11. Pursuant to the Exclusive License, Lynn Plasma was allowed to produce up to 500 Products annually for Commercial Use. Lynn Plasma was allowed to sell all or any portion of those units to Guardian. Under the Exclusive License, Heraeus agreed to

purchase from Lynn Plasma the balance of the 500 units annually that were not sold to Guardian.

12. NxEdge has requested that Heraeus fulfill its obligations under the Exclusive License by purchasing the balance of the 500 units annually that are not sold to Guardian, but Heraeus has not done so.

13. NxEdge, either as a third party beneficiary to the Exclusive License or as a successor to Lynn Plasma's rights with respect to the sale of products under the Guardian Agreement, has been damaged by Heraeus' refusal to purchase the balance of the 500 units annually that are not sold to Guardian.

### Count II  Breach of Contract (Nondisclosure Agreements)

14. NxEdge repeats the foregoing allegations.

15. Heraeus entered into a nondisclosure agreement with Lynn and Lynn Plasma, under which Heraeus agreed to maintain the confidentiality of information disclosed to Heraeus.

16. Heraeus also entered into one or more oral and written nondisclosure agreements with NxEdge, under which Heraeus agreed to maintain the confidentiality of information disclosed to Heraeus.

17. Pursuant to the confidentiality agreements, Lynn Plasma and NxEdge disclosed to Heraeus certain confidential information related to the manner in which they conducted their business in producing and selling sputter targets. The Lynn Plasma confidential information was subsequently assigned to NxEdge as part of an asset purchase agreement.

18. Upon information and belief, Heraeus used the information gained from Lynn Plasma or NxEdge in order to sell sputter targets in competition with NxEdge, giving Heraeus an improper competitive advantage.

19. Upon information and belief, Heraeus disclosed to others the information gained from Lynn Plasma or NxEdge in order to sell sputter targets in competition with NxEdge, giving Heraeus an improper competitive advantage.

20. The use and/or disclosure of confidential information by Heraeus is in violation of the nondisclosure agreements and amounts to a breach of those contracts.

21. NxEdge has suffered injury as a result of the breach, in an amount to be proven at trial.

22. The harm to NxEdge is ongoing and irreparable, and is likely to continue in the absence of equitable relief.

### Count III  Interference with Business Expectancy

23. NxEdge repeats the foregoing allegations.

24. Heraeus entered into a nondisclosure agreement with Lynn and Lynn Plasma, under which Heraeus agreed to maintain the confidentiality of information disclosed to Heraeus.

25. Heraeus also entered into one or more oral or written nondisclosure agreements with NxEdge, under which Heraeus agreed to maintain the confidentiality of information disclosed to Heraeus.

26. Pursuant to the confidentiality agreements, Lynn Plasma and NxEdge disclosed to Heraeus certain confidential information related to the manner in which they conducted their business in producing and selling sputter targets. The Lynn Plasma

confidential information was subsequently assigned to NxEdge as part of an asset purchase agreement.

27. Upon information and belief, Heraeus used the information gained from Lynn Plasma or NxEdge in order to sell sputter targets in competition with NxEdge, giving Heraeus an improper competitive advantage.

29. Upon information and belief, Heraeus disclosed to others the information gained from Lynn Plasma or NxEdge in order to sell sputter targets in competition with NxEdge, giving Heraeus an improper competitive advantage.

30. NxEdge has a reasonable expectation that it will be able to produce and sell sputter targets for ultimate sale to others, including Guardian, based on contractual relationships and prior business dealings. At all relevant times, Heraeus has been aware of the NxEdge business expectancy, including at least the relationship with Guardian.

31. The use and/or disclosure of confidential information by Heraeus is in violation of the nondisclosure agreements and was used in order to wrongfully cause Guardian to purchase sputter targets from Heraeus instead of purchasing sputter targets produced by NxEdge.

32. Heraeus' conduct was intended to and has caused NxEdge to suffer injury as a result of the breach, in an amount to be proven at trial.

33. The harm to NxEdge is ongoing and irreparable, and is likely to continue in the absence of equitable relief.

**Prayer for Relief**

Wherefore, NxEdge requests that the Court:

1. Enter judgment that Heraeus is in breach of the Exclusive License;

2. Award damages to NxEdge in an amount to be established at trial to compensate NxEdge for the breach of the Exclusive License;

3. Order Heraeus to comply with the Exclusive License by, at a minimum, meeting its obligations to purchase sputter targets from Lynn Plasma or NxEdge;

4. Award NxEdge its attorneys' fees and costs;

5. Enter judgment that Heraeus is in breach of nondisclosure agreements with NxEdge and Lynn Plasma;

6. Award damages to NxEdge in an amount to be established at trial to compensate NxEdge for the breach of the nondisclosure agreements;

7. Preliminarily and permanently enjoin Heraeus from making any further use of NxEdge's confidential information;

8. Award damages to NxEdge in an amount to be established at trial to compensate NxEdge for the interference with NxEdge's business expectancy;

9. Preliminarily and permanently enjoin Heraeus from any further conduct that will wrongfully interfere with NxEdge's business expectancy; and

10. Award such other and further relief as the Court may deem just and proper.

Dated: June 21, 2005

CONNOLLY BOVE LODGE & HUTZ LLP

/s/ Kevin M. Baird
Kevin M. Baird (#4219)
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899
Tel:  302.252.4234
Fax:  302.255.4311
kbaird@cblh.com

*Attorneys for NxEdge, Inc.and NxEdge Inc. of Boise*

OF COUNSEL:

Lawrence D. Graham, Esq.
David A. Lowe, Esq.
B<small>LACK</small> L<small>OWE</small> & G<small>RAHAM</small><sup>PLLC</sup>
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104
T: 206.381.3300
F: 206.381.3301

## **CERTIFICATE OF SERVICE**

   I, Kevin M. Baird, Esq. hereby certify that on June 21, 2005, copies of the foregoing document were caused to be served upon the following:

    **VIA ELECTRONIC FILING**
    Karen Jacobs Louden, Esq.
    Leslie A. Polizoti, Esq.
    MORRIS, NICHOLS, ARSHT & TUNNELL
    1201 N. Market Street
    P.O. Box 1347
    Wilmington, DE 19899-1347

          /s/ Kevin M. Baird
          Kevin M. Baird (#4219)